IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 10, 2011 Session

**LISA BRADFORD v. ABE STEPHENS**

**Appeal from the Circuit Court for Franklin County**
**No. 15,091-CV      J. Curtis Smith, Judge**

**No. M2010-01828-COA-R3 CV - Filed September 27, 2011**

The appellant, the former business partner of the appellee, appeals the trial court's determination that the appellee did not breach their partnership agreement, as well as the trial court's distribution of partnership profits.  Appellant also appeals the trial court's decision not to grant a jury trial.  We affirm the trial court's decision not to grant a jury trial as well as its determination that the appellee did not breach the partnership agreement.  We  adjust the amount of the court's awards to account for $5,000 of an $8,000 sale which the appellee kept rather than depositing it into the partnership account.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed as Modified**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and FRANK G. CLEMENT, JR., J., joined.

Norris Arthur Kessler III and Floyd Don Davis, Winchester, Tennessee, for the appellant, Abe Stephens.

John Mark Stewart, Winchester, Tennessee, for the appellee, Lisa Bradford.

**OPINION**

FACTUAL AND PROCEDURAL BACKGROUND

Abe Stephens owned and operated Home Furniture, a retail furniture store, in Franklin County.  Lisa Bradford was hired as his employee in 1999 and worked as a bookkeeper.  Around 2002, Stephens and Bradford agreed to be partners in a hot tub business, LA Spa.  They agreed to make equal contributions to the partnership and to equally share any profits.

They maintained a rental space in the Home Furniture building to sell their merchandise. Bradford continued working in the furniture business during the entire time the parties were engaged in the LA Spa partnership.

Bradford took maternity leave beginning on January 13, 2005, and did not return. She claims that Stephens told her not to return; Stephens claims that Bradford refused to return. Around the same time, Stephens discovered what he considered to be excessive credit card use by Bradford on the Home Furniture credit card he provided to her.

Bradford filed a complaint with a jury demand against Stephens on June 16, 2005, claiming that Stephens continued to operate the hot tub business and had not provided an accounting with regard to the proceeds from the sale of the partnership's inventory. Bradford sought a judicial determination declaring the partnership dissolved and terminated, as well as an accounting of partnership funds. Stephens filed an answer and counter-complaint, alleging a cause of action against Bradford for damages from conversion of funds from the partnership for her personal use.

Stephens filed a jury demand on July 26, 2007. On April 14, 2009, Bradford filed a motion to withdraw her earlier demand for a jury trial. A hearing was held on April 16, 2009. The court determined that the matter should proceed to trial without a jury because it involved a complicated accounting and judicial dissolution of a partnership.

A trial was held on April 17, 2009, and January 22, 2010. The court made its ruling on July 8, 2010. The court found that neither party had met its burden of proof to show that the other had breached the agreement. The court held that Bradford was entitled to an accounting of the partnership. The court made the following determinations:

- Bradford's gross contribution to the partnership was $90,600 and her withdrawals were $40,809.38, resulting in a net contribution of $49,790.62.

- Stephens's gross contribution to the partnership was $49,891.08 and his withdrawals were $14,000, resulting in a net contribution of $35,891.08.

- Subtracting Stephens's net contributions from Bradford's net contributions resulted in $13,899.54 in excess contributions made by Bradford.

- The partnership's net profit was $71,666.67. Subtracting Bradford's excess contributions from that amount resulted in partnership profit of $57,767.13 available for distribution. One-half of that amount is $28,883.56.

-2-

The court concluded that Bradford should be awarded $13,899.54 in excess contributions and $28,883.56 in partnership profits.

We review a trial court's findings of fact de novo with a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). We review questions of law de novo with no presumption of correctness. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

ANALYSIS

Stephens raises several alleged trial court errors on appeal which can be distilled into three issues—whether the trial court erred in declining to grant a jury trial, in declining to find that Bradford breached the oral contract between the parties by wrongful dissociation, and in its distribution of partnership profits.

Jury Trial

Stephens argues that the trial court erred in declining to grant a jury trial. Bradford filed a complaint with a jury demand against Stephens on June 16, 2005. Stephens filed a jury demand on July 26, 2007. On April 14, 2009, Bradford filed a motion to withdraw her earlier demand for a jury trial. A hearing was held on April 16, 2009. The court cited Tenn. Code Ann. § 21-1-103 in concluding that because this matter involves a complicated accounting of a partnership and judicial dissolution of said partnership, no right to trial by jury exists.

Tenn. Code Ann. § 21-1-103 states, in pertinent part, that "[e]ither party to a suit in chancery is entitled, upon application, to a jury to try and determine any material fact in dispute, save in cases involving complicated accounting." Tenn. Code Ann. § 21-1-101 extends the provisions of Title 21 to "all equitable proceedings in any other court."

Stephens has made no argument that this matter does not involve complicated accounting. It is apparent from the discussion that follows below that this case is one of complicated accounting requiring the trial court and this court to analyze numerous records concerning the parties' contributions to the partnership, both cash and in-kind, as well as the partnership's sales, purchases, and expenses. The language of Tenn. Code Ann. § 21-1-103 is clear. We affirm the trial court's decision declining to grant a jury trial.

<u>Breach of Contract by Wrongful Dissociation</u>

Stephens contends that the trial court erred in finding that Bradford did not breach the oral contract between the parties. Stephens asserts that the proof from both parties showed that Stephens simply told Bradford that they needed to discuss the credit card charges before she returned to work. He insists that he never told Bradford that she was fired from Home Furniture or that the partnership of LA Spa was to be wound up. Instead, Bradford filed suit for an accounting and damages.

Stephens contends that Bradford dissociated by "engag[ing] in conduct relating to the partnership business which ma[d]e it not reasonably practicable to carry on the business in partnership with the partner" pursuant to Tenn. Code Ann. § 61-1-601(5)(C). According to Stephens, this dissociation was wrongful under Tenn. Code Ann. § 61-1-602(b)(2) because this partnership was for a "particular undertaking" and Bradford dissociated "before . . . the completion of the undertaking."

The trial court found that there was conflicting proof as to which party violated the oral partnership contract. Bradford testified that Stephens told her not to return to work after she took maternity leave in January 2005:

> A: I was scheduled to return to work on Friday, March the 18th. I received a call that morning as I was preparing for work, from Mr. Stephens, for me to call him before I came to work.
>
> Q: And what did he tell you in that conversation?
>
> A: In that conversation he told me not to come in that day, that he needed to talk to me regarding some credit card charges on the Home Furniture card, and I said okay. I said, when would you like to talk to me? He said, call me on Monday.
>
> Q: Okay. And what did you do? Did you call him on Monday?
>
> A: Yes, sir. I called him on Monday and asked him what he wanted me to do. He said that I still needed to talk to him. I said, okay, when do you want to talk to me? He said, I'll call you and let you know.
>
> Q: Okay. So he told you he would call you?
>
> A: Yes, sir.

Q: Did he ever call you back?

A: No, sir.

Q: How long did you wait?

A: Two weeks.

Q: And that's when you called counsel?

A: Yes.

Stephens testified that Bradford refused to return after he asked her to come in and discuss her use of the Home Furniture credit card:

> Uh, she was to come back, uh, sometime six weeks, I think, or so after she left [for maternity leave] in January. . . . The credit card situation came up. [Bradford] had assured me all along and from some time back that she had paid all charges that she had made for personal use. I took that to be true. But as we checked into it more, as, uh, my ex-wife pressed the issue on that, uh, we checked into it and found that there were a considerable number of charges that were made that were, in fact, not paid back. So when it was time for her to come back, after I had found out this information, I called her and I think left a message for her to call me back. Then she called me and I told her that I—that the credit card situation was a bigger deal than I had been led to believe or that I thought it was and we needed to get together and get that squared away before she came back to work, and I never did hear from her about that until [her attorney] called me and then we got this lawsuit.

The trial court found that neither party established their version of events by a preponderance of the evidence. We cannot disagree with the trial court's determination. The trial court specifically found that "both parties' credibility was suspect." Because the trial court was in the best position to evaluate the credibility of the witnesses, we give great weight to its assessment of the evidence. *Boyer v. Heimermann*, 238 S.W.3d 249, 255 (Tenn. Ct. App. 2007). We affirm the trial court's determination that neither party carried its burden of establishing that the other breached the oral partnership agreement.

## Distribution of Partnership Profits

When she filed suit, Bradford sought an accounting of partnership funds. Tenn. Code Ann. § 61-1-401 describes a partner's rights and duties with respect to an accounting:

(a) Each partner is deemed to have an account, that is:

(1) Credited with an amount equal to the money plus the value of any other property, net of the amount of any liabilities, the partner contributes to the partnership and the partner's share of the partnership profits; and

(2) Charged with an amount equal to the money plus the value of any other property, net of the amount of any liabilities, distributed by the partnership to the partner and the partner's share of the partnership losses.

(b) Each partner is entitled to an equal share of the partnership profits and is chargeable with a share of the partnership losses in proportion to the partner's share of the profits.

Upon winding up the partnership, each partner is entitled to a settlement of accounts pursuant to Tenn. Code Ann. § 61-1-807(b):

In settling accounts among the partners, the profits and losses that result from the liquidation of the partnership assets must be credited and charged to the partners' accounts. The partnership shall make a distribution to a partner in an amount equal to any excess of the credits over the charges in the partner's account. A partner shall contribute to the partnership an amount equal to any excess of the charges over the credits in the partner's account, but exclude from the calculation charges attributable to an obligation for which the partner is not personally liable under § 61-1-306.

The trial court first determined the parties' contributions to the partnership. The court concluded that Bradford's gross contribution to the partnership was $90,600 and her withdrawals were $40,809.38, resulting in a net contribution of $49,790.62. The court concluded that Stephens's gross contribution to the partnership was $45,000 cash, plus an in-kind contribution of $4,891.08, resulting in a net contribution of $49,891.08. The court determined that, after taking a draw of $14,000, Stephens's net contribution was $35,891.08. The court then subtracted Stephens's $35,891.08 net contribution from Bradford's $49,790.62 net contribution, which resulted in $13,899.54 in excess contributions made by Bradford.

The partnership's net profit was determined to be $71,666.67, which represents the sale of sixteen hot tubs. The court subtracted Bradford's excess contributions from that amount, which resulted in partnership profit of $57,767.13 available for distribution. The court awarded Bradford one-half of that amount, $28,883.56, plus $13,899.54 in excess contributions.

On appeal, Stephens contends that the trial court made a number of errors in its calculation of the parties' contributions and partnership profit. Stephens first takes issue with the trial court's determination of the amount that he contributed to the partnership. It is undisputed that Stephens contributed $45,000, plus an in-kind contribution of $4,891.08 (representing $1,594.80 on training, $2,367.48 on a spa dolly, and $928.80 on Comcast advertising). Stephens claims that the trial court erroneously failed to include other expenses paid by Home Furniture for the benefit of LA Spa. According to Stephens, this amount totals $98,731.30.

The only evidence in the record supporting Stephens's claim is a document entitled "La Spa Profit and Loss," which lists the various expenses totaling $98,731.30. The trial court noted that this document was "prepared by Mr. Stephens, not his accountant, and it lacks credibility." The trial court further stated of the document: "Most of the expenses are based on what Mr. Stephens thought were reasonable only after the partnership failed. Some expenses are enumerated in [the document], but not substantiated by any other corroborative proof." The largest expense cited by Stephens is $50,800 for rent. Stephens testified that, prior to starting the spa business, he intended to rent three spaces in the front of the furniture store to help pay the mortgage on the building. Stephens testified that he and Bradford discussed paying rent on that space once they conceived of the spa business. Bradford testified that they never had a discussion about how expenses were to be apportioned between Home Furniture and LA Spa and that there was never a discussion of rent. She described the area occupied by LA Spa as "empty space" in the Home Furniture building.

In general, we cannot disagree with the trial court's assessment of the parties' contributions to the partnership. The expenses that Stephens allegedly incurred for the benefit of LA Spa are unsubstantiated and largely speculative. Some of the listed expenses have already been accounted for in other ways. For example, there are entries on the document for advertising ($1,605.30), training ($1,595.00), and a spa dolly ($3,075.00) when, as discussed above, those items were considered by the court in its calculation of Stephens's in-kind contributions. Furthermore, the trial court noted that both parties' "credibility was suspect." In the absence of other evidence, we must agree with the trial court's determination that Stephens failed to prove these other contributions. However, we do find merit in Stephens's contention that the trial court failed to account for $5,000 of an

$8,000 sale which Bradford kept for herself rather than deposit it into the LA Spa account. We discuss the effect of that adjustment below.

Stephens also claims that the trial court erred in determining the partnership profits. Stephens first claims that the trial court failed to deduct the cost of the initial purchase of the hot tubs and supplies in establishing the partnership profit. However, the initial cost of the hot tubs was figured into the court's calculation of the contributions by the parties. Stephens testified that he "put $35,000, in initially, for the purchase of the hot tubs and inventory." As discussed above, the trial court credited Stephens with this $35,000 contribution, just as it credited Bradford with a $90,600 gross contribution to the partnership.

Stephens also claims that the trial court failed to deduct the ordinary operating expenses of $22,236.26 in calculating the partnership profit. However, as discussed above, this figure comes from the same exhibit that the court discredited because it was prepared by Stephens himself based on what he thought was reasonable only after the partnership failed. Again, we note that the court found Stephens's credibility suspect. Additionally, the $22,236.26 total for ordinary operating expenses contains items already listed in the $98,731.30 total for "expenses," as discussed above. For example, there are duplicative entries in differing amounts for advertising, insurance, and supplies. In the absence of other evidence, we must agree with the trial court's determination that Stephens failed to prove these expenses in calculating partnership profit.

The other amounts with which Stephens takes issue were either credited to Stephens's partnership contribution or deducted from Bradford's partnership contribution in the trial court's accounting.

We must now adjust for the $5,000 of the $8,000 sale that Bradford retained for herself. Adding the $5,000 to Bradford's $40,809.38 withdrawals results in total withdrawals of $45,809.38. Deducting that amount from her partnership contribution of $90,600.00 results in a net contribution of $44,790.62. We subtract Stephens's $35,891.08 net contribution from Bradford's $44,790.62 net contribution, resulting in $8,899.54 in excess contributions made by Bradford. We then subtract Bradford's excess contributions from the partnerships's net profit of $71,666.67 for a partnership profit of $62,767.13 available for distribution. We award Bradford one-half of that amount, $31,383.56, plus $8,899.54 in excess contributions.

CONCLUSION

Costs of appeal are assessed against the appellant, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE